**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| Jeanfranco Alejandro Flores Salazar, | ) |
| | )   **Case No: 25-11159** |
| Petitioner, | ) |
| | ) |
| vs. | ) |
| | ) |
| Antone Moniz, Superintendent, | ) |
| Plymouth County Correctional Facility, | ) |
| | ) |
| Respondent. | ) |

## PETITION FOR WRIT OF HABEAS CORPUS

### *INTRODUCTION*

1.     Petitioner Jeanfranco Alejandro Flores Salazar has been unlawfully detained by the Department of Homeland Security (DHS) since approximately March 5, 2025.

2.     Mr. Flores Salazar fled his home in Venezuela for fear of political persecution and made his way to the U.S.-Mexico border where he did everything he was supposed to do to enter the United States. For nine months, though still fearing for his safety, he waited patiently in Mexico until Customs and Border Protection (CBP), a component of DHS, offered him an appointment and he presented himself at a port of entry as CBP had directed.

3.     At his CBP appointment on July 18, 2024, Mr. Flores Salazar was interviewed about his reasons for seeking entrance to the United States, and the interviewing officer granted Mr. Flores Salazar humanitarian parole to permit his presence in the United States for two years so that Mr. Flores Salazar could apply for asylum.

4.     Since then, Mr. Flores Salazar has continued to do just as CBP instructed: he attended his immigration court hearing, sought and obtained lawful work authorization based on

1

his grant of parole, sought stable housing and notified the immigration court about his change of address, and has otherwise strived to provide for himself while preparing to apply for asylum. He had, and still has, no criminal history here.

5.      In full compliance with CBP's directives, Mr. Flores Salazar was traveling with his work crew in early March on a job assignment in Maine when their van was unexpectedly stopped by CBP officers and the entire crew was ordered to present their immigration papers. Mr. Flores Salazar did so, showing the agents his lawful work permit, but he was nonetheless detained and ultimately transferred to the custody of Immigration and Customs Enforcement (ICE), another component of DHS.

6.      For thirty-four days, Mr. Flores Salazar remained in detention without any explanation whatsoever.

7.      Then on April 8, 2025, more than one month after he was first detained, Mr. Flores Salazar received a blanket notice to his e-mail account which stated that his parole had been revoked. The e-mail did not address Mr. Flores Salazar by name, did not include any identifying information at all, and did not provide any reason for the revocation.

8.      To date, Mr. Flores Salazar has received no other information—from CBP, ICE, or any other component of DHS—explaining on what basis he is being held in custody or on what basis his parole was revoked.

9.      In order to grant Mr. Flores Salazar parole, CBP was required by statute and by regulation to make an individualized determination that urgent humanitarian reasons or significant public benefit justified the parole grant. By regulation, CBP was required further to determine that Mr. Flores Salazar presented neither a security risk nor a risk of absconding.

10.     By that same regulation, DHS may only revoke Mr. Flores Salazar's grant of parole if the purpose for the parole has been accomplished or if, in the opinion of DHS, the public interest no longer warrants the grant of parole – such as, if Flores Salazar had become a danger or a flight risk.

11.     Mr. Flores Salazar reasonably and lawfully relied on CBP's parole determination to live and work in the United States and to seek relief under the Immigration and Nationality Act (INA) and pursuant to the United States's treaty obligations for the two-year period of his parole.

12.     That expectation was cut dramatically short and for no discernible reason unique to Mr. Flores Salazar. He was merely told, one month after first being hauled into custody, that his parole had been revoked, with wholesale citation to the parole granting statute and nothing more. Neither the INA nor the Constitution permits detention on so scant a basis.

13.     In the absence of any legitimate justification for his detention or parole revocation, Mr. Flores Salazar's continued custody is not authorized by law or otherwise violates the Due Process Clause of the Fifth Amendment.

14.     Accordingly, by this Petition, Mr. Flores Salazar requests that the Court order his immediate release from detention.

*JURISDICTION & VENUE*

15.     The U.S. District Court for the District of Massachusetts has jurisdiction to adjudicate the present Petition for Writ of Habeas Corpus pursuant to Sections 2241 and 1331 of United States Code Title 28.

16.     The U.S. District Court for the District of Massachusetts is the proper venue to hear Mr. Flores Salazar's petition because Mr. Flores Salazar is presently being detained at the Plymouth County Correctional Facility within the Commonwealth of Massachusetts.

*PARTIES*

17.     Jeanfranco Alejandro Flores Salazar is a national of Venezuela who is presently detained by Respondent Antone Moniz, the Superintendent of the Plymouth County Correctional Facility, at the direction of DHS.

18.     Respondent Antone Moniz is the Superintendent of, and thus has day-to-day control over, the Plymouth County Correctional Facility, the facility in which DHS is presently housing Mr. Flores Salazar and is being sued in his official capacity as Superintendent.

*FACTS*

**A.     Mr. Flores Salazar's Grant of Parole**

19.     Jeanfranco Alejandro Flores Salazar was born in Venezuela in 1999 and is a citizen of that country.

20.     Mr. Flores Salazar opposes the dictatorship of Nicolas Maduro in Venezuela.

21.     In 2023, Mr. Flores traveled to the U.S.-Mexico border to seek protection from political persecution in Venezuela.

22.     To seek asylum the United States, Mr. Flores Salazar traveled to Monterrey, Mexico, near the U.S.-Mexico border in October 2023 and downloaded the "CBP One" application on his phone. Through the app he requested an appointment with CBP at a port of entry.

23.     CBP One is an application created by the U.S. government to manage the inflow of those seeking to enter the United States via the U.S.-Mexico border. It instructs applicants to enter their information and make an appointment at a port of entry.

24.     After requesting the appointment, Mr. Flores Salazar waited patiently for approximately nine months in Monterrey to be given an appointment.

25.     On June 30, 2024, Mr. Flores Salazar received notice from CBP that he had been assigned an appointment for July 18, 2024.

26.     On July 18, 2024, Mr. Flores Salazar presented himself at a port of entry as directed by CBP.

27.     At the port of entry, Mr. Flores Salazar was questioned by a CBP officer about his reasons for leaving Venezuela and for coming to the United States.

28.     Mr. Flores Salazar told the CBP officer that he had come to the United States to seek asylum and he feared political persecution in Venezuela.

29.     The CBP officer granted Mr. Flores Salazar humanitarian parole for two years to enter and remain in the United States, until July 17, 2026, for the purpose of applying for asylum.

30.     The officer also gave Mr. Flores Salazar a notice to appear in immigration court, thus placing him in removal proceedings under section 240 of the INA.

31.     The CBP officer instructed Mr. Flores Salazar to apply for asylum within one year of his entry and told him, "Welcome to the United States."

32.     In order to grant Mr. Flores Salazar parole, by regulation CBP was required to make an individualized determination that urgent humanitarian reasons or significant public benefit justified the parole grant and that Mr. Flores Salazar presented neither a security risk nor a risk of absconding to avoid the outcome of his immigration proceedings, and that his detention would not be in the public interest.

**B.     Mr. Flores Salazar's Detention**

33.     In the United States, Mr. Flores complied with all the terms of his parole and appeared in immigration court, as instructed by the notice to appear given him.

34.     Mr. Flores Salazar applied for and was granted work authorization pursuant to his parole and obtained lawful employment with a construction and demolition company.

35.     Mr. Flores Salazar's job involved traveling to worksites around the country as part of a crew. In March 2025, his employer sent him to Maine for an assignment.

36.     Early in the morning on or about March 5, 2025, Mr. Flores Salazar was a passenger in his employer's van when CBP stopped the van and demanded to see the occupants' papers. Mr. Flores Salazar showed CBP his work permit but was nonetheless detained.

37.     Mr. Flores Salazar was bewildered by his detention, given his parole grant, valid work authorization, and lack of criminal history.

38.     A CBP officer told Mr. Flores Salazar he was being detained to check if his documents were fake.

39.     Despite the fact that Mr. Flores Salazar's documents were valid, CBP did not release him. Instead, he was transferred to ICE custody.

40.      Mr. Flores Salazar has been detained by ICE ever since.

41.     Mr. Flores Salazar is presently detained by ICE at Plymouth County Correctional Facility in Plymouth, Massachusetts.

**C.     Mr. Flores Salazar's Parole Revocation and Continued Detention**

42.     On April 8, 2025, while Mr. Flores Salazar remained in ICE custody, an e-mail was sent to Mr. Flores Salazar's e-mail account from donotreply@cbp.dhs.gov stating that his parole had been revoked. No reason was given for the revocation.

43.    This e-mail was not individualized to Mr. Flores Salazar. Rather, it was identical to e-mails received that same week by numerous others across the country who had similarly used the CBP One app to request entry to the United States.

44.    Mr. Flores Salazar was detained at the time the e-mail was sent and did not have access to his e-mail account. His mother, who monitors his e-mail account while he is detained, informed him of the e-mail. DHS did not serve Mr. Flores Salazar a notice of parole revocation in detention or otherwise notify him that his parole had been revoked.

45.    By a notice dated April 11, 2025, United States Citizenship and Immigration Services (USCIS) revoked Mr. Flores Salazar's work authorization, citing the revocation of his parole.

46.    On or about April 17, 2025, Mr. Flores Salazar filed an application for asylum and related relief in immigration court. He continues to zealously litigate his claims for immigration relief from detention.

47.    The Declaration of Petitioner Jeanfranco Alejandro Flores Salazar, sworn under penalty of perjury, is attached to this Petition as **Exhibit 1** and the allegations therein are incorporated hereto by reference – in satisfaction of the requirements of United States Code Title 28, Sections 2242 and 1746.

48.    A factsheet published by CBP about their CBP One application is attached to this Petition as **Exhibit 2.**

49.    Press reports describing e-mails received across the country similar to the one received by Mr. Flores Salazar on April 8, 2025, are attached as **Exhibit 3.**

*FIRST CAUSE OF ACTION - UNLAWFUL DETENTION*
*IN VIOLATION OF UNITED STATES CODE TITLE 8, SECTION 1182*

50.     Mr. Flores Salazar incorporates paragraphs 1 through 49 above as if fully restated below.

51.     Mr. Flores Salazar is currently in the custody of Respondent under or by color of the authority of the United States – that is, detained in the Plymouth County Correction Facility at the direction of DHS.

52.     Mr. Flores Salazar has been subjected to detention by Respondent at the direction of DHS.

53.     DHS granted Mr. Flores Salazar parole pursuant to 8 U.S.C. § 1182(d)(5)(A) on July 18, 2024, for a period of two years until July 17, 2026.

54.     The grant of parole authorized Mr. Flores Salazar to remain in the United States free from detention until the expiration of the time for which parole was authorized.

55.     In granting him parole, by regulation, DHS necessarily determined that Mr. Flores Salazar merited parole for urgent humanitarian reasons, that he was neither a danger to the community nor a flight risk, and that his detention was not in the public interest.

56.     Mr. Flores Salazar was granted parole so that he could apply for asylum within one year of entry and pursue his claim for immigration relief free from detention.

57.     On or about March 5, 2025, DHS took Mr. Flores Salazar into custody despite his grant of parole.

58.     DHS continued to detain Mr. Flores Salazar for over a month despite his grant of parole.

59.     On April 8, 2025, DHS sent a form notice to Mr. Flores Salazar's email account revoking his parole.

60.     This notice was not individualized to Mr. Flores Salazar and did not state a reason for revoking the parole.

61.     This notice did not meet the statutory and regulatory requirements for terminating parole granted pursuant to 8 U.S.C. § 1182(d)(5)(A).

62.     No circumstances have occurred that would legitimately disturb DHS's determination that Mr. Flores Salazar merited a grant of parole.

63.     Mr. Flores Salazar has applied for asylum within one year of entry and is pursuing his claim for immigration relief.

64.     In detaining Mr. Flores Salazar while he had a grant of parole and continuing to detain him after improperly revoking his parole, DHS acted in violation of 8 U.S.C. § 1182(d)(5)(A).

### SECOND CAUSE OF ACTION - UNLAWFUL DETENTION IN VIOLATION OF U.S. CONSTITUTION, FIFTH AMENDMENT – PROCEDURAL DUE PROCESS

65.     Mr. Flores Salazar incorporates paragraphs 1 through 64 above as if fully restated below.

66.     Mr. Flores Salazar is currently in the custody of Respondent under or by color of the authority of the United States – that is, detained in the Plymouth County Correction Facility at the direction of DHS.

67.     Mr. Flores Salazar has been subjected to detention by Respondent at the direction of DHS.

68.     DHS arrested Mr. Flores Salazar on or about March 5, 2025, while he had a valid grant of humanitarian parole and has detained him ever since.

69.     On April 8, 2025, DHS sent a form notice to Mr. Flores Salazar's email account revoking his parole.

70.     This notice was not individualized to Mr. Flores Salazar and did not state a reason for revoking the parole.

71.     DHS has provided Mr. Flores Salazar with no notice of the reason for his detention and no opportunity to challenge the reason for his detention.

72.     DHS has deprived Mr. Flores Salazar of liberty without due process, in violation Mr. Flores Salazar's procedural due process rights under the Fifth Amendment of the U.S.

*THIRD CAUSE OF ACTION - UNLAWFUL DETENTION IN VIOLATION OF U.S. CONSTITUTION, FIFTH AMENDMENT – SUBSTANTIVE DUE PROCESS*

73.     Mr. Flores Salazar incorporates paragraphs 1 through 72 above as if fully restated below.

74.     Mr. Flores Salazar is currently in the custody of Respondent under or by color of the authority of the United States – that is, detained in the Plymouth County Correction Facility at the direction of DHS.

75.     Mr. Flores Salazar has been subjected to detention by Respondent at the direction of DHS.

76.     DHS granted Mr. Flores Salazar parole pursuant to 8 U.S.C. § 1182(d)(5)(A) on July 18, 2024, for a period of two years until July 17, 2026.

77.     The grant of parole authorized Mr. Flores Salazar to remain in the United States free from detention until the expiration of the time for which parole was authorized.

78.     In granting him parole, by regulation, DHS necessarily determined that Mr. Flores Salazar merited parole for urgent humanitarian reasons, that he was neither a danger to the community nor a flight risk, and that his detention was not in the public interest.

79.     Mr. Flores Salazar was granted parole so that he could apply for asylum within one year of entry and pursue his claim for immigration relief free from detention.

80.     DHS arrested Mr. Flores Salazar on or about March 5, 2025, while he had a valid grant of humanitarian parole and has detained him ever since.

81.     On April 8, 2025, DHS sent a form notice to Mr. Flores Salazar's email account revoking his parole.

82.     This notice was not individualized to Mr. Flores Salazar and did not state a reason for revoking the parole.

83.     No circumstances have occurred that would legitimately disturb DHS's determination that Mr. Flores Salazar merited a grant of parole.

84.     Mr. Flores Salazar has applied for asylum within one year of entry and is pursuing his claim for immigration relief.

85.     There is no compelling and legitimate government purpose for which DHS could detain Mr. Flores Salazar, as he has been determined to be neither a danger nor a flight risk and he cannot be removed while he pursues his asylum claim.

86.     Mr. Flores Salazar has been and continues to be detained in violation of his substantive due process rights under the Fifth Amendment of the U.S. Constitution.

*PRAYER FOR RELIEF*

Wherefore, Mr. Flores Salazar respectfully requests that the Court:

A.     Order Respondent to release Mr. Flores Salazar immediately;

B.     Award to Mr. Flores Salazar his reasonable litigation costs and attorney's fees pursuant to the Equal Access to Justice Act; and

C.     Grant such other further relief that is deemed just and proper by the Court.

Respectfully submitted,

JEANFRANCO ALEJANDRO FLORES SALAZAR,

By his attorney,

*/s/ Claire Maguire*

Claire  Maguire
BBO # 709426
Northeast  Justice  Center
181 Union Street
Suite 201B
Lynn, MA 01901
(978) 888-0661
cmaguire@njc-ma.org

Dated:  April 29, 2025